LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
CARRILLO LAW FIRM, LLP
1499 Huntington Drive, Suite 402
South Pasadena, CA 91030
Tel: (626) 799-9375

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL PIÑA, an individual. | **Case No.: 5:26-cv-2843** |
| Plaintiff, | **COMPLAINT FOR DAMAGES**<br>1. **False Arrest/ False Imprisonment**<br>2. **Assault and Battery**<br>3. **Violations of the Bane Act (Cal. Civil Code § 52.1)**<br>4. **Intentional Infliction of Emotional Distress of Plaintiff**<br>5. **Violations of Civil Rights** |
| v. | |
| United States of America; United States Department of Homeland Security; United States Immigration and Customs Enforcement; United States Customs and Border Protection; and DOES 1 through 20, inclusive, | 6. **Conspiracy to Commit Civil Rights Violations**<br>7. **Fourth Amendment – Unlawful Detention and Arrest**<br>8. **Fourth Amendment -- Excessive Use of Force**<br>9. **Fifth Amendment – Denial of liberty without due process of law** |
| Defendants. | 10. **First Amendment Violations – Interference by Defendants**<br>11. **Fifth Amendment - Denial of Medical Care** |
| | **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR DAMAGES

**COMES NOW**, Plaintiff **ANGEL PIÑA**, ("Plaintiff"), alleges as follows:

## JURISDICTION AND VENUE

1.     This action arises directly under the United States Constitution.

2.     This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiff assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## INTRODUCTION

4.     This is a civil action for damages brought by the Plaintiff against all of the Defendants for violations of the Plaintiff's constitutional and statutory rights, such as violations of the First Amendment, violations of the Fourth Amendment, and violations of the Fifth Amendment. Plaintiff also seek redress for false arrest, false imprisonment, assault, battery, personal injury harm, violations of the Bane Act (Cal. Civil Code Section 52.1); and redress for the Intentional Infliction of emotional distress, among other claims, under the Federal Tort Claims Act (FTCA).

5.     This civil rights and state tort action arises out of Plaintiff's unlawful detention, seizure, restraint, and mistreatment by federal agents outside a Stater Bros. market in Ontario, California.

6.     Plaintiff alleges that Defendants violated his constitutional rights by detaining and seizing him without reasonable suspicion or probable cause, using excessive and unreasonable force, and depriving him of his liberty without due process of law. These violations occurred despite Plaintiff's non-threatening behavior, lack of

COMPLAINT FOR DAMAGES

any criminal activity, and repeated statements confirming that he is a United States citizen and requesting medical assistance.

7.     Plaintiff further alleges that Defendants' conduct included chasing Plaintiff without justification, forcefully tackling him from behind, piling on top of him while he was on the ground, physically restraining and handcuffing him, and placing him into an UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT ("ICE") vehicle while he was injured and in custody. Plaintiff was detained without lawful justification, denied freedom of movement, subjected to unnecessary and excessive force despite posing no threat and committing no crime; and Plaintiff .

8.     Plaintiff alleges that Defendants' actions were arbitrary, unreasonable, and motivated, by racial profiling and discriminatory intent, including treating Plaintiff differently based on his race, ethnicity, and/or perceived national origin.

9.     The policies, practices, and customs underlying Defendants' conduct, including the failure to properly verify identity following facial recognition errors, the use of unnecessary force, and the prolonged detention of individuals without lawful basis, are unconstitutional and have resulted in violations of the civil rights of individuals such as Plaintiff.

10.     Plaintiff asserts claims based on Defendants' violations of his rights under the First, the Fourth and Fifth Amendments to the United States Constitution, as well as related state-law claims, including false arrest/false imprisonment, assault and battery, negligence, violations of the Bane Act, intentional infliction of emotional distress, and conspiracy to commit civil rights violations.

11.     Plaintiff seeks to hold Defendants accountable for their unlawful conduct, to obtain compensation for the injuries he suffered, and to deter similar unconstitutional conduct in the future.

## **PARTIES**

12.     At all times relevant, Plaintiff ANGEL PIÑA (Hereinafter "Plaintiff" or "PIÑA"), a U.S. citizen, was an individual residing in the City of Ontario.

COMPLAINT FOR DAMAGES

13. At all relevant times, Defendant UNITED STATES OF AMERICA was, and is, a sovereign entity and is subject to suit under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680. The United States is responsible for the acts and omissions of its agencies, including the Department of Homeland Security, Immigration and Customs Enforcement, Customs and Border Protection, and its component agencies, and for the conduct of its employees acting within the course and scope of their employment.

14. At all relevant times, Defendant UNITED STATES DEPARTMENT OF HOMELAND SECURITY ("DHS") was, and is, a department of the Executive Branch of the United States Government and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DHS is headquartered in Washington, D.C.

15. At all relevant times, Defendant UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT (Hereinafter "ICE") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). ICE is headquartered in Washington, D.C. and maintains field offices throughout the United States.

16. At all relevant times, Defendant UNITED STATES CUSTOMS AND BORDER PROTECTION (Hereinafter "CBP") was, and is, a component agency of DHS and an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is headquartered in Washington, D.C. and maintains field offices throughout the United States.

17. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believe, and thereon allege, that each of the DOE Defendants was, at all relevant times, an employee, agent, servant, or representative of Defendants DHS, ICE and/or CBP, and was acting within the course and scope of such

COMPLAINT FOR DAMAGES

employment, agency, or representation. Plaintiff further alleges that the acts and omissions of Defendants, including DOES 1 through 20, were a proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

18. At all times mentioned herein, each Defendant was responsible in some manner for the acts and occurrences alleged in this Complaint. Plaintiff's damages, as alleged herein, were proximately caused by the acts and omissions of each of the Defendants.

19. Defendants the United States, DHS, ICE, CBP, and DOES 1 through 20, inclusive, are collectively referred to herein as "Defendants." Defendant DOES 1 through 20 (the "DOE AGENTS") are Federal agents.

20. At all relevant times, each Defendant was the agent, servant, employee, joint venturer, and/or co-conspirator of each other and every other Defendants, and in doing the acts alleged herein, was acting within the course and scope of such relationship and under color of law. In doing the things herein alleged, Defendants were acting under the color of law and within the course and scope of their duties of said alternative personality, capacity, identity, agency, representation and/or employment and were within the scope of their authority, whether actual or apparent.

## FACTUAL ALLEGATIONS

21. Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein against all Defendants.

22. Plaintiff ANGEL PIÑA is a United States Citizen, of Latino descent, living in the City of Ontario in California. PIÑA was born in Lynwood, California.

23. On or about July 21, 2025, PIÑA and his wife were outside a Stater Bros. market in Ontario, California. While there, they observed federal agents interacting with three minor children outside the store. PIÑA's wife observed Federal agents harassing and physically pushing a teenage girl. Concerned for the children's safety, PIÑA's wife called 911 and reported that Federal agents were harassing and pushing minors.

COMPLAINT FOR DAMAGES

24. Shortly after the 911 call, PIÑA began to move away from the scene. Without warning, an agent chased PIÑA and forcefully tackled him from behind. As PIÑA lay on the ground, another agent jumped on top of him and placed him in handcuffs. A third agent then arrived and applied his body weight onto PIÑA while PIÑA was already restrained.

25. PIÑA was then placed, while handcuffed, into an Immigration and Customs Enforcement ("ICE") vehicle. While inside the vehicle, a female officer with the Ontario Police Department opened the door. While in custody, PIÑA repeatedly yelled to ICE agents and Ontario police officers that he was a United States citizen and that he needed medical attention. Despite these statements, PIÑA's freedom of movement remained restricted, and he was not permitted to leave.

26. As a direct result of the force used against him, PIÑA suffered injuries to his head, ankle, shoulder, and face, along with multiple bruises and soreness throughout his body. Due to the severity of his injuries, Plaintiff was transported by ambulance to Kaiser Hospital in Baldwin Park, California, where he received medical treatment. PIÑA continues to suffer physical pain and extreme emotional distress and has experienced ongoing fear and anxiety, including fear of returning to work since the incident.

27. At no time during the incident was PIÑA interfering with any law enforcement activity or detention of others. PIÑA had not committed any offense, was not suspected of any criminal activity, and was not a threat to officer safety or national security. Defendants provided no verbal warning prior to tackling and restraining PIÑA, and PIÑA repeatedly informed Defendants that he was a United States citizen while being detained.

28. Defendants lacked reasonable suspicion or probable cause to detain, restrain, or arrest Plaintiff and had no evidence that PIÑA had committed, was committing, or was about to commit any crime. Nevertheless, Defendants used unreasonable and excessive force in tackling, restraining, and handcuffing PIÑA, and

subsequently placed him in an ICE vehicle while still in handcuffs. PIÑA requested medical attention while in custody, which was necessitated by Defendants' use of force.

29.   PIÑA's wife, Becky Piña, witnessed the events described herein.

30.   PIÑA suffered severe emotional distress as a direct result of Defendants' actions. PIÑA was targeted, because of his race, ethnicity, and/or skin color, despite being a United States citizen.

31.   The agents involved in the incident were employees and/or agents of ICE, CBP, and/or DHS. Plaintiff alleges that Defendants engaged in racial profiling and used threats, intimidation, and coercive conduct during the incident.

**A. DHS Adopted Policies to Further the United States' Directive to Increase Immigration Enforcement**

32.   DHS adopted three challenged policies as part of a broader directive from the White House and Border Czar Homan to increase immigration arrests and removals by raiding workplaces based on which industries tend to employ undocumented workers rather than a prior investigation to identify whether there's any reason to suspect that employees on a particular worksite are undocumented.

33.   These directives are aimed at increasing the number of undocumented people arrested and removed from several hundred a day to at least 3,000 per day.

34.   The stated goal is to deport one million people per year, which requires 2,739 arrests per day, not counting the citizens and other lawful residents who are mistakenly arrested.[1]

35.   The 3,000-arrests-per-day quota is the "minimum" goal.[2]

36.    "Arresting, you know, several hundred a day isn't enough. So yeah, we

[1] Brittany Gibson & Stef W. Kight, *Scoop: Stephen Miller, Noem tell ICE to supercharge immigration raids* (May 28, 2025), https://www.axios.com/2025/05/28/immigration-ice-deportations-stephen-miller.

[2] *Id.*

COMPLAINT FOR DAMAGES

gotta vastly increase that," confirmed Border Czar Homan.[3]

37.    The administration's directive to ICE's leadership was clear: "do what you need to do" to increase deportation numbers. The administration encouraged immigration officers to "push the envelope" and turn the "creativity knob up to 11"; "[i]f it involves handcuffs on wrists, it's probably worth pursuing."[4]

38.    To meet the 3,000-daily-arrest quota, the United States has taken several steps that inform the policies challenged here, including: (1) increasing the number of immigration officers, in part by deputizing law-enforcement officers from other agencies; (2) increasing workplace enforcement; and (3) targeting people who work in certain industries and fit a generalized demographic profile rather than conducting targeted investigations to find people who might be violating immigration laws.

**1. Turning Federal Law Enforcement Into Immigration Enforcement**

39.    On inauguration day, President Trump signed Executive Order 14159 ("Protecting the American People Against Invasion"), which instructs the Attorney General, DHS, ICE, CBP, U.S. Citizenship and Immigration Services (CIS), and HSI to prioritize immigration arrests and deportations and for the Attorney General and Secretary of Homeland Security to jointly establish Homeland Security Task Forces nationwide.

40.    Executive Order 14159 also instructs the Secretary of Homeland Security to (1) make HSI's "primary mission" enforcement and removal and (2) take all appropriate action to enable the Director of ICE, the Commissioner of CBP, and the Director of CIS to set priorities that ensure enforcement and removal.

---

[3] Cam Smith, *Vt. Officials respond to Trump administration's 'sanctuary city' threats*, WCAX3 (May 30, 2025), https://www.wcax.com/2025/05/30/vt-officials-respond-trump-administrations-sanctuary-city-threats/; Transcript of interview with White House Border Czar Tom Homan, *State of the Union*, CNN (aired July 13, 2025), https://transcripts.cnn.com/show/sotu/date/2025-07-13/segment/01.

[4] Elizabeth Findell, *et al.*, *The White House Marching Orders That Sparked the L.A. Migrant Crackdown*, Wall St. J. (June 9, 2025), https://www.wsj.com/us-news/protests-los-angeles-immigrants-trump-f5089877.

41.     The Secretary of Homeland Security has statutory authority to "confer or impose" on any federal employee the power to investigate and arrest illegal immigrants. See 8 U.S.C. § 1103(a); without an arrest warrant signed by a Federal judge.

42.     On January 23, 2025, the Acting Secretary exercised that power to authorize DOJ law-enforcement officers working for USMS, DEA, ATF, and the Bureau of Prisons to serve as immigration officers.[5]

43.     Weeks later, Secretary Noem began deputizing law-enforcement officers from other federal agencies to serve as immigration officers.[6]

44.     By August 2025, over 14,500 federal law-enforcement officers, another 1,400 non-law-enforcement federal officers, and about 10,000 state and local law-enforcement officers are now deputized to serve as immigration officers.[7]

**2. Prioritizing Random Arrest Over Targeted Enforcement**

45.     Until this year, immigration officers planning to search for and seize undocumented immigrants have had to submit a form to a supervisor identifying their target's name, appearance, known addresses, employment, immigration history, and criminal history.

46.      But this year, DHS eliminated the policy that required immigration officers to identify their targets in advance; and without an arrest warrant signed by a

[5] Press Release, *Statement from a DHS Spokesperson on Directive Expanding Immigration Law Enforcement to Some Department of Justice Officials*, Dep't of Homeland Sec. (Jan. 23, 2025), https://www.dhs.gov/news/2025/01/23/statement-dhs-spokesperson-directive-expanding-immigration-law-enforcement.

[6] Press Release, *ICYMI: Secretary Noem Deputized State Department Officials as Immigration Officers*, Dep't of Homeland Sec. (Feb. 20, 2025), https://www.dhs.gov/news/2025/02/20/secretary-noem-deputized-state-department-officials-immigration-officers; Vittoria Elliot, *State Department Agents Are Now Working With ICE on Immigration*, WIRED (Sept. 4, 2025), https://www.wired.com/story/state-department-dss-agents-ice-immigration/

[7] David J. Bier, *ICE Has Diverted Over 25,000 Officers from Their Jobs*, Cato Inst. (Sept. 3, 2025), https://www.cato.org/blog/ice-has-diverted-over-25000-officers-their-jobs.

COMPLAINT FOR DAMAGES

Federal judge.

47.     The policy became useless, according to former immigration officials, because DHS no longer requires officers to know their targets before they go out to make arrests.[8]

48.     Rather than relying on targeted investigations, Border Czar Homan and Secretary Noem directed immigration officers to go on patrols to search for people who work in certain industries and fit a generalized demographic profile of an undocumented worker in that industry.

49.     DHS has developed a general demographic profile of what undocumented people tend to look like in an industry or location.

50.     A top CBP official, for instance, explained that officers are detaining people based on their "location" and "how they look."[9] Racial profiling was permitted by all Defendants.

**B. Operation "Return to Sender"**

51.     Upon information and belief, a lawsuit filed in the Fresno Division of the Eastern District of California arose out of an enforcement operation referred to as "Operation Return to Sender," which was conducted in Kern County and surrounding areas and involved the deployment of approximately sixty federal agents from the El Centro Sector under the direction of Gregory Bovino.[10]

52.     The operation involved stops, detentions, and arrests of individuals in predominantly Latino communities, including farmworkers and day laborers, many

[8] Julia Ainsley et al., *Under Trump administration, ICE scraps paperwork officers once had to do before immigration arrests*, NBC News (Sept. 9, 2025), https://www.nbcnews.com/politics/national-security/trump-administration-ice-scraps-paperwork-officers-immigration-arrests-rcna229407.

[9] Chip Mitchell, *Feds march into Chicago; top border agent says people are arrested based on 'how they look,'* Chicago Sun Times (Sept. 28, 2025), https://chicago.suntimes.com/immigration/2025/09/28/ice-agents-spotted-downtown-on-michigan-avenue-along-chicago-river.

[10] *United Farm Workers v. Kristi Noem*, Case No. 1:25-cv-00246-JLT-CDB.

COMPLAINT FOR DAMAGES

ofwhom were not suspected of criminal activity.[11]

53.   The allegations in that action included that individuals were detained without individualized suspicion and that enforcement actions were carried out in a manner that disproportionately targeted persons based on race, ethnicity, and/or perceived immigration status, and "racial profiling" was permitted.

54.   Upon information and belief, the conduct at issue in that action reflects a pattern, practice, or custom of unlawful detention practices and inadequate safeguards to prevent the detention of United States citizens and other individuals without lawful basis.

55.   Defendants, were on notice of such conduct and the risk of constitutional violations arising from similar enforcement practices, yet failed to take reasonable steps to prevent such violations, including the conduct alleged in this case.

56.   PIÑA timely submitted a claim for damages to the United States Department of Homeland Security, U.S. Customs and Border Protection, U.S. Immigration and Customs Enforcement, and other appropriate federal agencies. The claim was rejected.

## FIRST CLAIM FOR RELIEF

### False Arrest/False Imprisonment

(By Plaintiff against all Defendants)

57.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

58.   Defendants, including agents of the UNITED STATES, DHS, ICE, CPB, and DOES 1 through 20, while acting within the course and scope of their employment, intentionally deprived Plaintiff of his freedom of movement by use of force, threats of force, and unreasonable duress.

59.   Defendants detained, restrained, and arrested Plaintiff without reasonable

---

[11] *Id.*

suspicion, probable cause, or any lawful justification.

60. Plaintiff did not consent to the detention, restraint, or arrest.

61. On or about July 21, 2025, in Ontario, California, Defendants approached and seized Plaintiff while he was present outside a Stater Bros. market observing federal agents harassing minors. Plaintiff was not committing any crime and had not been informed that he was suspected of any criminal activity.

62. Without warning or lawful justification, Defendants chased Plaintiff as he attempted to leave the area and forcefully tackled him from behind. Defendants then physically restrained Plaintiff, piled on top of him while he was on the ground, and placed him in handcuffs.

63. Defendants placed Plaintiff, while handcuffed, into an ICE vehicle, where his freedom of movement was completely restricted and he was not permitted to leave despite his requests.

64. While detained, Plaintiff repeatedly informed Defendants that he is a United States citizen and requested assistance, including medical attention. Defendants failed to take reasonable steps to verify Plaintiff's identity or otherwise justify his continued detention.

65. At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any legal basis to detain or arrest him. Defendants' conduct in detaining, restraining, and arresting Plaintiff was unlawful and without privilege or consent.

66. Defendants' conduct was a substantial factor in causing harm to Plaintiff.

67. As a direct and proximate result of Defendants' actions, Plaintiff suffered loss of liberty, physical injury, emotional distress, humiliation, and other damages.

68. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive and exemplary damages.

69. Defendants are liable for Plaintiff's injuries because they were integral

12

COMPLAINT FOR DAMAGES

participants in the unlawful detention and arrest and/or failed to intervene to prevent the violations described herein.

70.    Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

71.    Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SECOND CLAIM FOR RELIEF

### Assault and Battery

(By Plaintiff against all Defendants)

72.    Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

73.     Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, while acting within the course and scope of their employment, intentionally and unlawfully used force against Plaintiff.

74.    Defendants, without lawful justification, intentionally used force against Plaintiff in Ontario, California, including chasing him, forcefully tackling him from behind, jumping and piling on top of him while he was on the ground, physically restraining him, handcuffing him, and placing him into custody in an ICE vehicle.

75.    During the detention and arrest, Defendants applied significant physical force to Plaintiff, including taking him to the ground, applying their body weight onto him while he was restrained, and maintaining him in handcuffs while injured and confined in a custodial setting.

76.    The force used by Defendants was harmful and offensive, was carried out without Plaintiff's consent, and was excessive and unreasonable under the circumstances, as Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

77.    At all times, Plaintiff had committed no crime, was not suspected of committing any crime, and Defendants lacked any lawful basis to use force against

COMPLAINT FOR DAMAGES

him.

78.     The force used by Defendants was unreasonable and excessive under the circumstances, including in light of the fact that Plaintiff was not committing any crime, did not pose a threat, and repeatedly informed Defendants, in both English and Spanish, that he is a United States citizen while requesting that they verify his identity.

79.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injuries, including pain and bodily harm, as well as emotional distress, humiliation, and psychological trauma.

80.     Defendants, and each of them, either directly participated in the unlawful use of force, were integral participants in the conduct, and/or failed to intervene to prevent the unlawful use of force despite having a realistic opportunity to do so.

81.     The conduct of Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive and exemplary damages against the individual Defendants.

82.     Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

83.     Plaintiff further seeks punitive damages against the individual DOE Defendants.

### THIRD CLAIM FOR RELIEF

### Violations of Bane Act (Cal. Civil Code § 52.1)

(By Plaintiff against all Defendants)

84.     Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

85.     California Civil Code section 52.1 (the "Bane Act") prohibits any person from interfering, or attempting to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of rights secured by the Constitution or laws of the United States or the State of California.

86.     Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through

14

COMPLAINT FOR DAMAGES

20, inclusive, while acting within the course and scope of their employment, intentionally interfered with Plaintiff's constitutional rights by means of threats, intimidation, and coercion.

87. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Ontario, California; chasing Plaintiff; forcefully tackling him from behind; piling on top of him while he was on the ground; physically restraining and handcuffing him; and placing Plaintiff into an ICE vehicle despite Plaintiff's repeated statements that he is a United States citizen.

88. During the incident, Defendants engaged in threats, intimidation, and coercion independent of the underlying detention, including the use of significant physical force to seize and restrain Plaintiff, applying body weight onto him while he was subdued, maintaining him in handcuffs while injured, and confining him in a custodial setting despite his repeated assertions of identity and requests for medical attention. Defendants further refused to credit or reasonably investigate Plaintiff's statements regarding his United States citizenship, thereby prolonging and intensifying the coercive nature of the detention.

89. The conduct of Defendants constituted threats, intimidation, or coercion separate from, and in addition to, the underlying unlawful detention, including the use of physical restraints and prolonged confinement to compel Plaintiff's compliance and submission.

90. Through the above-described conduct, Defendants interfered with Plaintiff's rights, including but not limited to the right to be free from unreasonable searches and seizures, the right to liberty, and the right to due process of law.

91. Defendants acted intentionally, knowingly, and with reckless disregard for Plaintiff's rights, and their conduct was malicious, oppressive, and in conscious disregard of those rights.

92. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical pain, emotional distress, humiliation, and other damages.

COMPLAINT FOR DAMAGES

93. The conduct of Defendants was a substantial factor in causing Plaintiff's harm.

94. Defendants are liable for Plaintiff's injuries because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations

95. Plaintiff seeks compensatory damages, statutory damages, attorneys' fees, costs, and all other relief deemed just and proper.

96. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FOURTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff against all Defendants)

97. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

98. Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, engaged in extreme and outrageous conduct toward Plaintiff.

99. Defendants' conduct included, but was not limited to: unlawfully detaining and arresting Plaintiff in Ontario, California without reasonable suspicion or probable cause; chasing Plaintiff; forcefully tackling him from behind; forcing him to the ground; piling on top of him while he was restrained; physically restraining and handcuffing Plaintiff; placing Plaintiff into an ICE vehicle; and disregarding Plaintiff's repeated statements that he is a United States citizen and his requests for medical attention.

100. Defendants knew, or should have known, that their conduct would cause Plaintiff severe emotional distress, particularly given that Plaintiff was not committing any crime, posed no threat, repeatedly informed Defendants of his identity and citizenship, requested verification, and was subjected to significant force and prolonged detention.

101. Defendants' conduct was intentional and/or reckless, and was carried out

with a conscious disregard for Plaintiff's rights and well-being.

102. The conduct described herein was so extreme and outrageous as to exceed all bounds of that usually tolerated in a civilized society.

103. As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including but not limited to humiliation, anxiety, fear, shock, and mental anguish, arising from the traumatic experience of being wrongfully detained and treated as a criminal.

104. Plaintiff also suffered physical manifestations of emotional distress, including pain, discomfort, and bodily harm associated with the force used during his detention and arrest.

105. Defendants' conduct was a substantial factor in causing Plaintiff's injuries.

106. The conduct of Defendants was willful, wanton, malicious, and oppressive, entitling Plaintiff to an award of exemplary and punitive damages against the individual Defendants.

107. Defendants are liable for Plaintiff's injuries because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the wrongful acts; and defendants inflicted the intentional infliction of emotional distress.

108. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

109. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## FIFTH CLAIM FOR RELIEF

### Violation of Civil Rights

(By Plaintiff against all Defendants)

110. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

COMPLAINT FOR DAMAGES

111.   This cause of action is brought pursuant to the United States Constitution for violation of Plaintiff's Civil rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law.

112.   Upon information and belief, Defendants, acting under color of federal authority, intentionally, recklessly, and/or with deliberate indifference to Plaintiff's clearly established constitutional and civil rights, engaged in unlawful acts and omissions, including but not limited to:

    a.  detaining, seizing, and arresting Plaintiff without reasonable suspicion or probable cause;

    b.  failing to properly investigate or verify Plaintiff's identity despite Plaintiff's repeated statements that he is a United States citizen;

    c.  disregarding Plaintiff's statements regarding his identity and citizenship;

    d.  failing to take reasonable steps to confirm Plaintiff's identity before and during his detention;

    e.  using unnecessary and excessive force, including chasing Plaintiff, forcefully tackling him from behind, piling on top of him while he was on the ground, restraining him, and handcuffing him;

    f.  continuing to detain Plaintiff despite the absence of any lawful basis;

    g.  failing to recognize that Plaintiff posed no threat and was not committing any crime;

    h.  placing Plaintiff into an ICE vehicle while he was injured and in custody without justification;

    i.  failing to provide or timely respond to Plaintiff's requests for medical attention;

    j.  failing to implement or follow reasonable procedures for lawful detention, investigation, and use of force;

COMPLAINT FOR DAMAGES

    k. failing to adequately train, supervise, and discipline agents regarding lawful detention, investigation, and use of force; and

    l. failing to properly communicate and coordinate information among agents during the incident.

113. The foregoing conduct deprived Plaintiff of rights secured by the Constitution and laws of the United States, including but not limited to the right to be free from unreasonable seizures, excessive force, unlawful detention, and deprivation of liberty without due process of law under the Fourth and Fifth Amendments.

114. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered physical pain, bodily injury, emotional distress, humiliation, embarrassment, anxiety, and other damages according to proof.

115. Defendants' conduct was a substantial factor in causing Plaintiff's harm.

116. Plaintiff seeks compensatory damages, attorneys' fees, costs, and such other relief as the Court deems just and proper.

## SIXTH CLAIM FOR RELIEF

### Conspiracy to Commit Civil Rights Violations

(By Plaintiff against all Defendants)

117. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

118. This cause of action is brought pursuant to the United States Constitution for conspiracy to violate Plaintiff's rights under the Fourth and Fifth Amendments to the United States Constitution, including the right to be free from unreasonable seizures and the right to liberty without due process of law. A conspiracy claim under Bivens is actionable where there is an express or implied agreement among defendants to deprive a person of constitutional rights, and an actual deprivation resulting from that agreement.

119. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP and DOES 1 through 20, inclusive, reached an express and/or implied agreement

COMPLAINT FOR DAMAGES

among themselves to detain, restrain, and subject Plaintiff to unlawful treatment without reasonable suspicion or probable cause.

120. In furtherance of their agreement, the Individual Defendants acted in concert to approach and detain Plaintiff outside a Stater Bros. market in Ontario, California while he was observing their activities; pursue Plaintiff as he attempted to leave the area; forcefully tackle him from behind; pile on top of him while he was on the ground; physically restrain and handcuff him; disregard Plaintiff's repeated statements that he is a United States citizen; place Plaintiff into an ICE vehicle; and detain Plaintiff without lawful justification.

121. Defendants knew or reasonably should have known that Plaintiff was a United States citizen who had committed no crime and posed no threat, yet nonetheless agreed to continue Plaintiff's detention and restraint without lawful justification.

122. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, and not by any lawful or objective criteria. Defendants treated Plaintiff differently from similarly situated individuals who were not of Plaintiff's race or ethnicity, including by subjecting Plaintiff to prolonged detention, restraint, and investigation despite the presentation of valid identification and proof of United States citizenship.

123. Defendants' conduct constituted impermissible racial profiling and selective enforcement in violation of the equal protection component of the Fifth Amendment, as Defendants targeted Plaintiff based on his appearance and/or perceived immigration status rather than any individualized suspicion of wrongdoing.

124. Defendants' decision to continue detaining Plaintiff despite his repeated statements that he is a United States citizen, his requests that Defendants verify his identity, and the absence of any lawful basis for his detention further demonstrates that Defendants' actions were not motivated by legitimate law enforcement objectives, but were instead driven, at least in part, by discriminatory intent.

125. The coordinated actions of Defendants were not the result of independent

COMPLAINT FOR DAMAGES

decision-making, but rather were undertaken pursuant to a shared understanding and agreement to deprive Plaintiff of his constitutional rights.

126.   As a direct and proximate result of this agreement and the acts taken in furtherance thereof, Plaintiff was subjected to an unlawful seizure, excessive force, and deprivation of liberty and equal protection without due process of law.

127.   The conduct of each individual Defendants was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages.

128.   Defendants are liable for the constitutional violations alleged herein because they were integral participants in the conspiracy and resulting unlawful conduct and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

129.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

130.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

## SEVENTH CLAIM FOR RELIEF

### Fourth Amendment—Detention and Arrest

(By Plaintiff against all Defendants)

131.   Plaintiff re-alleges and incorporates by reference each and every preceding paragraph as though fully set forth herein.

132.   The Fourth Amendment protects individuals against unreasonable searches and seizures, including detention without reasonable suspicion and arrest without probable cause, as well as the use of excessive force during a seizure.

133.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, detained, restrained, and seized Plaintiff without reasonable suspicion or probable cause, thereby subjecting Plaintiff to an unlawful detention and arrest in violation of the Fourth

Amendment.

134.   At all relevant times, Defendants lacked reasonable suspicion or probable cause to detain or arrest Plaintiff. Plaintiff had committed no crime, was not suspected of any criminal activity, and was lawfully present at his workplace at the time of the incident.

135.   Despite Plaintiff's repeated statements that he is a United States citizen and his requests that Defendants verify his identity, Defendants continued to detain Plaintiff without justification and without taking reasonable steps to confirm his identity.

136.   Defendants further violated Plaintiff's Fourth Amendment rights by subjecting him to excessive and unreasonable force, including chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, and placing him into custody in an ICE vehicle, causing physical pain and injury.

137.   Defendants' conduct, including the unlawful detention, use of significant physical force, continued restraint, and confinement in a custodial setting despite the absence of any lawful basis for the seizure, was objectively unreasonable under the circumstances and not justified by any legitimate law enforcement need.

138.   Each Defendant is liable for these violations because they directly participated in the unlawful conduct, were integral participants, and/or failed to intervene to prevent the violations despite having a realistic opportunity to do so.

139.   Upon information and belief, Defendants acting under color of federal law, implemented, maintained, and/or permitted policies, practices, or customs that directly resulted in the unlawful seizure, prolonged detention, and use of excessive force against Plaintiff in violation of the Fourth Amendment.

140.   These policies, practices, and customs included, but were not limited to: (a) detaining individuals without reasonable suspicion or probable cause following facial recognition errors; (b) failing to implement adequate procedures to verify United

COMPLAINT FOR DAMAGES

States citizenship using valid identification; and (c) permitting the use of unnecessary and excessive restraints, including prolonged handcuffing, absent any legitimate law enforcement justification.

141.   Defendants knew or reasonably should have known that such policies, practices, and failures would lead to violations of the Fourth Amendment, including unlawful seizures and excessive force, yet failed to take reasonable steps to prevent such violations.

142.   As a direct and proximate result of Defendants' actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

143.   Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages against the individual Defendants.

144.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

145.   Plaintiff further seeks punitive damages against the individual DOE Defendants.

### EIGHT CLAIM FOR RELIEF

**Fourth Amendment—Excessive Force**

(By Plaintiff against all Defendants)

146.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

147.   Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, used force against Plaintiff during his detention at Los Angeles International Airport.

148.   The force used by Defendants was objectively unreasonable under the circumstances. Plaintiff was compliant at all times, posed no threat to the safety of any officer or others, was not attempting to flee, and was not suspected of committing any crime.

149.  Notwithstanding the absence of any legitimate law enforcement need, Defendants used significant physical force against Plaintiff, including chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, and placing him into custody in an ICE vehicle.

150.  The force used against Plaintiff caused physical pain and injury, including injuries to his head, ankle, shoulder, and face, as well as bruising and soreness throughout his body.

151.  Defendants' use of force was unnecessary, excessive, and disproportionate to any perceived need, and was not justified by any legitimate governmental interest, particularly where Plaintiff was not committing any crime, was not resisting, and posed no threat to officer safety.

152.  The force used against Plaintiff was part of, and exacerbated by, an unlawful detention, further rendering the use of force unreasonable under the Fourth Amendment.

153.  Each individual Defendant is liable for the use of excessive force because they directly participated in the conduct, were integral participants, and/or failed to intervene to prevent the unlawful use of force despite having an opportunity to do so.

154.  As a direct and proximate result of Defendant's actions, Plaintiff suffered physical injury, pain, emotional distress, humiliation, and other damages.

155.  The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff constitutional rights, entitling Plaintiff to an award of punitive damages and Plaintiff seeks punitive damages against the individual DOE Defendants. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

## NINTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Liberty Without Due Process of Law

(By Plaintiff against all Defendants)

COMPLAINT FOR DAMAGES

156. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

157. The Due Process Clause of the Fifth Amendment provides that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend.

158. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of protected liberty and property interests without due process of law.

159. Defendants deprived Plaintiff of his liberty by unlawfully detaining, seizing, and restraining him in Ontario, California without probable cause, reasonable suspicion, or any lawful justification.

160. During this detention, Defendants restricted Plaintiff's freedom of movement by chasing him, forcefully tackling him from behind, forcing him to the ground, piling on top of him while he was restrained, physically restraining and handcuffing him, placing him into an ICE vehicle, and preventing him from leaving despite his compliance and repeated statements that he is a United States citizen.

161. Defendants' decision to continue detaining Plaintiff despite his repeated statements that he is a United States citizen and his requests that Defendants verify his identity demonstrates that the detention was arbitrary, unreasonable, and not based on any legitimate law enforcement objective.

162. Defendants knew or reasonably should have known that Plaintiff's continued detention was baseless, yet failed to release him.

163. Upon information and belief, Defendants lacked adequate procedures, training, or safeguards to ensure that individuals are promptly released once it becomes apparent that there is no lawful basis for detention.

164. Defendant's conduct was arbitrary, conscience-shocking, and undertaken without any legitimate governmental interest.

165. Defendants acted with deliberate indifference to Plaintiff's rights by

COMPLAINT FOR DAMAGES

continuing to detain him despite clear evidence of his identity and citizenship.

166. Upon information and belief, Defendant's actions were motivated, in whole or in part, by Plaintiff's race, ethnicity, and/or perceived national origin, further rendering the deprivation of Plaintiff's liberty and property unlawful.

167. As a direct and proximate result of Defendants' conduct, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

168. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's constitutional rights, entitling Plaintiff to an award of punitive damages for the conduct of Does 1- through 20.

169. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

170. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper.

171. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## TENTH CLAIM FOR RELIEF

### First Amendment Violations - Interference by Defendants

(By Plaintiff against all Defendants)

172. Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

173. Defendants, including agents of the UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under the First Amendment by interfering with and retaliating against his lawful activity of observing federal agents performing their duties in a public setting and calling for emergency services.

174. Plaintiff engaged in constitutionally protected activity by observing federal agents interacting with individuals outside a Stater Bros. market in Ontario,

California and calling for emergency services. Plaintiff's conduct was lawful, occurred in a public setting, and involved matters of public concern.

175.   Defendants took adverse government action against Plaintiff by pursuing him, forcefully tackling him, detaining and arresting him, and preventing him from continuing to observe the agents' activities.

176.   Plaintiff's protected activity was a substantial or motivating factor in Defendants' actions. Defendants' conduct was initiated in response to Plaintiff's observation of their activities and would chill a person of ordinary firmness from continuing to engage in such protected activity.

177.   As a direct and proximate result of Defendants' actions, Plaintiff suffered damages, including loss of First Amendment freedoms, physical injury, emotional distress, and other damages in an amount to be determined at trial.

178.   The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's First Amendment rights, entitling Plaintiff to an award of punitive damages.

179.   Defendants are liable for the violations of Plaintiff's First Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the violations.

180.   Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other relief deemed just and proper. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## ELEVENTH CLAIM FOR RELIEF

### Fifth Amendment - Denial of Medical Care

(By Plaintiff against all Defendants)

181.   Plaintiff re-alleges and incorporates by reference each and every paragraph above as though set forth fully in this cause of action.

182.   Defendants, including agents of the DHS, ICE, CBP, and DOES 1 through 20, inclusive, acting under color of federal law, deprived Plaintiff of his rights under

the Fifth Amendment by failing to provide and timely obtain necessary medical care while Plaintiff was in custody, despite Plaintiff's repeated requests for medical attention and the obvious nature of his injuries, thereby acting with deliberate indifference to Plaintiff's serious medical needs.

183. While in Defendants' custody, Plaintiff exhibited obvious signs of physical injury, including pain to his head, ankle, shoulder, and face, as well as visible bruising and distress resulting from the force used against him.

184. Plaintiff repeatedly requested medical attention from Defendants while he was detained and confined in an ICE vehicle.

185. Despite Plaintiff's requests and the apparent need for medical care, Defendants failed to provide or timely obtain appropriate medical treatment for Plaintiff.

186. Defendants knew, or reasonably should have known, that Plaintiff faced a substantial risk of harm if his medical needs were not addressed, yet consciously disregarded that risk.

187. Defendants' failure to provide medical care was objectively unreasonable under the circumstances and constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Fifth Amendment.

188. As a direct and proximate result of Defendants' conduct, Plaintiff suffered unnecessary pain, exacerbation of his injuries, and emotional distress

189. The conduct of each individual Defendant was willful, wanton, malicious, and carried out with reckless disregard for Plaintiff's Fifth Amendment rights, including deliberate indifference to Plaintiff's serious medical needs, thereby entitling Plaintiff to an award of punitive damages.

190. Defendants are liable for the violations of Plaintiff's Fifth Amendment rights because they were integral participants in the unlawful conduct and/or failed to intervene to prevent the denial of necessary medical care.

191. Plaintiff seeks compensatory damages, attorneys' fees, costs, and all other

relief deemed just and proper.

192. Plaintiff further seeks punitive damages against the individual DOE Defendants.

## PRAYER FOR RELIEF

193. WHEREFORE, Plaintiff respectfully requests entry of judgment in his favor and against the Defendant United States, the Defendants UNITED STATES, DHS, ICE, CBP, and DOES 1 through 20, inclusive, as follows:

    a. For compensatory damages, including damages under federal law, in an amount to be proven at trial;

    b. For punitive damages against the individual DEFENDANTS, DOES 1 through 20;

    c. For reasonable attorneys' fees pursuant to applicable law;

    d. For costs of suit incurred herein;

    e. For pre-judgment and post-judgment interest as allowed by law; and

    f. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: May 26, 2026          CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: May 26, 2026                    CARRILLO LAW FIRM, LLP

By: _____
Luis A. Carrillo, Esq.,
Attorney for Plaintiff

COMPLAINT FOR DAMAGES